IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


STANLEY LORENZO WILLIAMS,        )
                                 )
              Petitioner,        )
                                 )
          v.                     )     1:07CV828
                                 )
ROBERT W. SMITH and THEODIS BECK,)
                                 )
              Respondents.       )


        **MEMORANDUM OPINION, ORDER, AND RECOMMENDATION**
                **OF MAGISTRATE JUDGE ELIASON**

    Petitioner, a prisoner of the State of North Carolina, has filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In that petition, he claims that his rights were violated because he did not have counsel appointed to represent him during his resentencing hearing, because the attorney appointed to handle the appeal of his resentencing caused the appeal to be dismissed when he did not file a Record on Appeal, and because his right to appeal was not reinstated.

    The lengthy history underlying this case is as follows. On March 26, 1998, in Cabarrus County, Petitioner pled guilty to possession with intent to sell and deliver cocaine and being a habitual felon in cases 98 CRS 2037 and 2930. He was sentenced to 84 to 110 months of imprisonment, but he later filed a motion for appropriate relief. The trial court granted that motion and struck Petitioner's guilty pleas. The charges against Petitioner were then reinstated and set for trial.

On September 3, 1999, Petitioner was convicted by a jury on both charges. He was then given an increased sentence of 133 to 169 months of imprisonment. Petitioner spent the next two and a half years litigating or attempting to litigate his case in the state courts. Petitioner filed numerous documents at different levels of the state courts. He filed so many, in fact, that it appears that he is now barred from filing documents in the state courts without permission.

Having failed to get relief in the state courts, Petitioner submitted a petition for habeas relief to this Court in mid-March of 2003 [1:03CV299]. Petitioner did receive relief in that case, and this Court ordered that the State either release Petitioner or resentence him to no more than the 84 to 110 months of imprisonment he originally received. Following that order, Petitioner was resentenced to 70 to 93 months of imprisonment. Unhappy even with this undeservedly reduced sentence, Petitioner filed a notice of appeal. Counsel was appointed and Petitioner's attorney subsequently filed an <u>Anders</u> brief. He did not, however, file a Record on Appeal. This resulted in the dismissal of Petitioner's direct appeal of his resentencing. Petitioner sought certiorari in the North Carolina Supreme Court, but this was denied on October 6, 2005. Petitioner did not seek certiorari from the United States Supreme Court.

On February 4, 2006, following a further attempt at relief in the North Carolina Court of Appeals, Petitioner filed a motion for

appropriate relief in the state trial court.  He captioned the
document as being filed in cases 98 CRS 2037 and 2930.  However,
the relief that he sought was resentencing in case 97 CRS 10872.[1]
Therefore, the state court judge concluded that the motion was
filed in that case and the related cases of 97 CRS 9849 and 9850.
He dismissed the motion for lack of jurisdiction due to the fact
that a direct appeal was then pending in those other cases.
Petitioner litigated that ruling further in state court by filing
a writ of mandamus in the North Carolina Court of Appeals and a
writ of prohibition with the North Carolina Supreme Court, but
these attempts at relief were unsuccessful.

    Petitioner next turned to this Court by filing a habeas
petition on September 6, 2006 [1:06CV750].  He raised several
claims in that petition, but among them was the substance of the
claims he raises in his current petition regarding his lack of
counsel and his attorney's failure to follow through in pursuit of
his appeal.  In a recommendation entered on January 22, 2007, the
undersigned agreed with the state courts that Petitioner's January
23, 2006 motion for appropriate relief did not seek relief in cases
98 CRS 2037 and 2930, but also concluded that, in any event, the
state court MAR did not raise the claims he now seeks to raise in
the present petition.  For this reason, Petitioner's state court
remedies as to the present claims were unexhausted and this Court
could not grant relief under 28 U.S.C. § 2254.  Rather than

---

[1] Plaintiff is incarcerated on multiple state convictions.

recommend dismissal of these claims on the merits, the undersigned recommended that they be dismissed without prejudice to Petitioner exhausting the claims in state court. That recommendation was adopted, and the claims dismissed without prejudice, by an order and judgment entered on March 16, 2007.[2] Petitioner attempted to appeal that order, but the appeal was dismissed on August 29, 2007.

Although Petitioner continued to litigate in this Court and the Fourth Circuit Court of Appeals regarding the January 13, 2007 recommendation and March 16, 2007 dismissal, he also simultaneously returned to state court in an attempt to exhaust his claims. He filed a motion for appropriate relief in the state trial court on February 12, 2007. The motion was denied, but Petitioner then sought a writ of certiorari from the North Carolina Court of Appeals. That court deemed the petition frivolous and refused to file it in an order entered April 2, 2007. Petitioner then submitted the current habeas petition in this Court on October 26, 2007. It is dated as being signed and placed into the prison mailing system on October 22, 2007. Respondents have filed alternative motions to have the petition either dismissed for being out of time under 28 U.S.C. § 2244(d)(1) (Docket No. 5) or denied on summary judgment (Docket No. 8).

---

[2]Other claims also raised in that petition were considered and denied on their merits.

## Discussion

Respondents request dismissal on the ground that the petition was filed[3] outside of the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132 ("AEDPA"). 28 U.S.C. § 2244(d)(1). The AEDPA amendments apply to petitions filed under § 2254 after April 24, 1996. Lindh v. Murphy, 521 U.S. 320 (1997).

Interpretations of the limitation periods found in 28 U.S.C. §§ 2244(d)(1) and 2255 have equal applicability to one another. Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999). The limitation period ordinarily starts running from the date when the judgment of conviction became final at the end of direct review. Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000). Finality has been construed to mean when a petitioner may no longer seek further review because of (1) the denial of a petition for certiorari to the United States Supreme Court; or, (2) the expiration of the time to file such a petition. Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002); see United States v. Segers, 271 F.3d 181 (4th Cir. 2001)(federal conviction). Here, Petitioner did pursue a direct appeal from his resentencing. According to Respondents, Petitioner's conviction became final on January 4, 2006, which was the expiration of the time for seeking certiorari from the United States Supreme Court regarding the October 6, 2006

---

[3] A petition is filed by a prisoner when the petition is delivered to prison authorities for mailing. Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999).

-5-

order denying review of the dismissal of the state court appeal. His convictions were final on that date and his AEDPA one-year time period began to run.[4] This meant that he then had one year, or until early January of 2007, to file his current petition. However, the petition was not filed until October of 2007. Nothing else appearing, the petition is well out of time.

The one-year limitation period is tolled while state post-conviction proceedings are pending. Harris, supra. The suspension is for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Here, both the state court and this Court have previously concluded that Petitioner's January 2006 motion for appropriate relief was not an attempt at collateral review in cases 98 CRS 2037 and 2930. Therefore, it could not serve to toll the running of the limitation period. Instead, the first clear attempt made by Petitioner in pursuing state court collateral relief was his filing of his motion for appropriate relief in February of 2007. By that time, the one-

---

[4]Petitioner did file a pro se request for a belated appeal with the North Carolina Court of Appeals in late January of 2006. Had this motion been granted, it would have reset the one-year period under § 2244 because it would have continued his direct appeal. See Frasch v. Peguese, 414 F.3d 518 (4th Cir. 2005)(finality date reset where motion for belated appeal was granted). However, it was denied on February 2, 2006 and the original January 2006 date of finality for Petitioner's conviction remained in place.

year limitation period had already expired. His filing did not revive it. Minter v. Beck, 230 F.3d 663 (4th Cir. 2000).

It is also true that Petitioner did seek a writ of mandamus in the North Carolina Court of Appeals and a writ of prohibition with the North Carolina Supreme Court in order to challenge the state trial court's ruling that his January 2006 motion for appropriate relief was not part of cases 98 CRS 2037 and 2930. However, these filings are not part of the usual post-conviction process in North Carolina, and so do not serve to toll the limitation period. See Headen v. Beck, 367 F. Supp. 2d 929, 932 (M.D.N.C. 2005); Saquilar v. Harkleroad, 348 F. Supp. 2d 595, 598 (M.D.N.C. 2004)(belated attempts at relief that are outside the typical direct review process do not ordinarily affect finality or toll AEDPA's one-year limitation period). In fact, as Respondents point out, the writ of prohibition was submitted to the North Carolina Supreme Court, which does not take part in the collateral review process in noncapital cases. N.C. R. App. P. 21(e). Therefore, in addition to being outside the typical collateral review process, the writ does not appear to be "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2). See Artuz v. Bennett, 531 U.S. 4 (2000)(discussing which documents are considered "properly filed" for tolling purposes). Petitioner's attempts at receiving a writ of mandamus and writ of prohibition did not toll his one-year filing deadline.

Petitioner argues that his one-year limitation period was tolled during the time that his non-exhausted habeas petition in case 1:06CV750 was pending in this Court. However, he cites no authority for this proposition and his argument runs counter to case law and the plain language of AEDPA. Duncan v. Walker, 533 U.S. 167, 181-82 (2001). Section 2244(d)(2) allows for tolling only during the pendency of state collateral review proceedings. Attempts at relief in federal court are not part of the state collateral review process, and so do not fall within AEDPA's tolling provision. Id. In the end, Petitioner can point to no meritorious basis for tolling the running of the one-year limitation period. Therefore, his time to file in this Court ran before he ever sought collateral relief in the state courts and his current petition was filed out of time.

It is true that the Fourth Circuit, as well as a number of courts, have held that the one-year limitation period is subject to equitable tolling. Harris, supra; Sandvik, 177 F.3d at 1271 (collecting cases). Equitable tolling may apply when a petitioner has been unable to assert claims because of wrongful conduct of the state or its officers. A second exception is when there are extraordinary circumstances, such as when events are beyond the prisoner's control and the prisoner has been pursuing his rights diligently. Pace v. DiGuglielmo, 544 U.S. 408 (2005); Harris, supra; Akins v. United States, 204 F.3d 1086 (11th Cir. 2000). Circumstances are beyond a prisoner's control if he has been

prevented in some extraordinary way from exercising his rights. See Smith v. McGinnis, 208 F.3d 13 (2d Cir. 2000). This might occur where a prisoner is actively misled or otherwise prevented in some extraordinary way from exercising his rights. Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999). On the other hand, unfamiliarity with the legal process, lack of representation, or illiteracy does not constitute grounds for equitable tolling. Harris, supra; Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999). Likewise, mistake of counsel does not serve as a ground for equitable tolling. Taliani v. Chrans, 189 F.3d 597 (7th Cir. 1999); Sandvik, 177 F.3d 1269. Nor are prison conditions, such as lockdowns or misplacement of legal papers, normally grounds for equitable tolling. Akins, 204 F.3d 1086. Waiting years to raise claims in state court and months to raise them in federal court shows lack of due diligence. Pace, supra. Finally, in order to show diligence, the prisoner must show diligence not merely at the federal level, but throughout the entire post-conviction process in order to have equitable tolling available to him. Coleman, 184 F.3d at 402.

Petitioner has not raised any arguments obviously aimed at equitable tolling. Nor are any grounds for such tolling apparent on the record. Petitioner is a pro se litigant, but an extremely experienced pro se litigant who has filed several prior habeas petitions. He makes no claim that he was misled into filing in this Court prior to exhausting his state court remedies, nor was he

somehow prevented from pursuing exhaustion in the state courts. At least at the time of the November 1, 2006 filing of Respondents' summary judgment brief in case 1:06CV750, Petitioner was explicitly informed of the need to exhaust his claims in this case. Still, he did not attempt to do so until more than three months later in February of 2007. He then waited five more months to file the present petition following the end of the state court collateral review process. This makes the petition about six months out of time and substantially so. This is so despite the fact that he was only reraising claims from his previous petition and that he was warned in Respondents' summary judgment brief about the problem and also warned in the recommendation entered in 1:06CV750 of the need to act in a timely fashion. The record does not contain facts that would entitle Petitioner to equitable tolling and he has not shown the necessary diligence in any event. His petition is time-barred and Respondents' motion to dismiss should be granted.

In addition to the motion to dismiss, there are a number of other motions pending in this case. They are: Respondents' alternative motion for summary judgment (Docket No. 8), Petitioner's motion to strike Respondents' answer (Docket No. 11), Petitioner's request for a transcript of the state court proceedings where he allegedly waived his right to counsel at resentencing (Docket No. 12), Petitioner's motion to expand the record (Docket No. 13), Petitioner's motion to stay execution of the state court sentence (Docket No. 14), Petitioner's motion for

default judgment (Docket No. 15), Petitioner's motion for matters to be put to rest (Docket No. 17), and Petitioner's motion to change venue (Docket No. 18). All of these motions can be dealt with in short order.

Respondents' motion for summary judgment was made only in the alternative to its motion to dismiss. Because the motion to dismiss should be granted, the motion for summary judgment should be denied for being moot. The granting of the motion to dismiss will also moot all of Petitioner's motions, none of which affect the merits of the decision on the motion to dismiss. His motion to strike the answer is frivolous and, in any event would not help him because the motion to dismiss stands independent of the answer. His motions for a transcript and to expand the record seek documents pertaining to the merits of his claims or documents already present in the Court's records in Petitioner's other cases. Naturally, these motions are moot because the merits of his claims will not be considered and because any documents in his other cases which pertain to this case are already available if needed.

Petitioner's motion for default judgment and motion to stay the execution of his sentence are based on the idea that the answer will be stricken and that he may prevail on the merits. Because neither of these hopes have come to fruition, the motions also fail. Finally, Petitioner's motions to put matters to rest and to change venue are both attempts at receiving a ruling on the pending motions in this case. A ruling has now been made, rendering these

-11-

motions moot. They will be denied along with Petitioner's other motions.

For all of the reasons set out above,

**IT IS THEREFORE ORDERED** that Petitioner's motion to strike Respondents' answer (Docket No. 11), Petitioner's request for a transcript of the state court proceedings where he allegedly waived his right to counsel at resentencing (Docket No. 12), Petitioner's motion to expand the record (Docket No. 13), Petitioner's motion to stay execution of the state court sentence (Docket No. 14), Petitioner's motion for default judgment (Docket No. 15), Petitioner's motion for matters to be put to rest (Docket No. 17), and Petitioner's motion to change venue (Docket No. 18) are all denied.

**IT IS RECOMMENDED** that Respondents' motion to dismiss (Docket No. 5) be granted, that Respondents' alternative motion for summary judgment (Docket No. 8) be denied for being moot, that the habeas petition (Docket No. 2) be dismissed, and that Judgment be entered dismissing this action.

_____
**United States Magistrate Judge**

August 1, 2008